## CHICAGO & ALTON R. R. Co.
### v.
## HENRY MURPHY.

EVIDENCE—NEGLIGENCE.—As there is no proof of negligence on the part of appellant, the hole in question, into which appellee slipped, being necessary and proper for the management of appellant's locomotive, and appellee being perfectly familiar with the entire situation and having taken the risk, the verdict for appellee can not be sustained.

APPEAL from the City Court of East St. Louis; the Hon. W. P. LAUNTZ, Judge, presiding. Opinion filed December 14, 1885.

Mr. L. H. HITE, for appellant.

Messrs. FLANNIGEN & CANBY, for appellee.

WILKIN, J.    This action was brought by appellee against appellant to recover damages for a personal injury, received, as he alleges, through its negligence in permitting a hole to be and remain in its yard, by the side of its track, which was at the time partially filled with loose ashes.

The declaration also alleges that the appellee was, at the time of the injury, in the employment of the appellant as a switchman in its yard; "was walking along its side track near said hole and attempted, in the performance of his duties, exercising due care, to jump upon the foot-board of a certain engine belonging to defendant, and in so doing placed his right foot on said foot-board and caught hold of the hand rail on the tender of said locomotive, and at the same time with his left foot stepped in the ashes in said hole, thereby slipped, lost his footing, and in attempting to swing himself around on the foot board his left foot caught under the wheels of the engine and his great toe was mashed."

The only evidence offered by appellee as to the manner in which he received his injury was the following:

He testified: "I live in Venice; on April 30, 1884, I was

working in the Chicago and Alton round house at night. I and the hostler took out engine 28; I held turn-table while he backed engine off; then it was my duty to go back and throw switches some little distance back from turn-table, and I walked on past the engine, which was running slow. I came to a place betwixt two tracks; it was probably two feet and a half deep and at each end the ashes were loose; there was an engine on both sides, and to step on back part of the switch engine backing out it was necessary to run around the head of the engine, and I aimed to step on the step-board with my right foot, and my left foot was in the ashes in the hole, and in throwing the weight on left foot the ashes gave way with me and slipped down in the hole. I grabbed with my hand the railing on the end of the tank, and in pulling myself up the left foot swung under the hind wheel of the tank and it went over my toes—mashed all my toes, but did not injure any of them only the big toe. I pulled myself on the engine and went back to throw switch for engine to back out. That hole is just across what we call the house track; it was in the company's yard. The hole was right against the track; part of the ties are sticking over the hole; they dig it out on both sides; it must be about twenty feet long and two feet deep; there was some loose ashes in it at each end; in the center they had cleared ashes out whole length I was right at the hole when I jumped on engine, and in stepping my left foot went in; did not notice appearance of it; I thought the edge of the hole was solid; I jumped on engine at this point because I thought I had to be back there to turn switch. I was obliged to go through this hole; don't know that I was compelled to get on there, but it was convenient to step on. I was there and engine was there and if I had let it pass I could not get on on account of the hole. My duty there was to help take in engines to clean, wipe, give sand and water and also take engines out of the round house and turn these switches; it is usual and customary to jump on the hind end of an engine when going to turn a switch. There were two tracks that were used alongside this one; one was for the engines to clean the fire out over the pit, and this track I got

hurt on was used for running engines in there and running to the turn-table and round house. This engine was being used and operated by the Chicago and Alton company."

On cross-examination he testified: "I was right at the ash-pit, standing over it. Did not get on engine after it backed off because it was running, and I wanted to get on back end so I could be there to turn switch—it was running very slow, and I walked past it. Did not get on engine till it was clear off, because I had to hold the table firm. I was on west side of coaling track when I got on. I stepped with right foot on foot-board of the engine on back end of tank; then stepped with left foot in this ash pit; was standing with left foot in the ashes when I stepped on, and then when I threw weight of myself on the left foot the ashes gave way and let that foot down in the hole; the engine was alongside of me and when I went to step on the foot-board the weight of my left foot gave me a shove and the ashes went down; the hole was partly filled with ashes at that point; down the center it was two feet deep or more; this hole was used to put ashes into that were shoveled out of the ash pit. I knew there was a hole there as it had been there to hold ashes to be put on cars ever since I was there—about eleven months; held turn table often before; it was daylight at the time of the accident; I saw the ground as I walked up after the engine, and had seen it often before; I knew there was a hole there—of course I did; I knew it when I went to get on the engine."

On re-examination he says: "It was my duty to hold on to the arm of turn-table until engine was entirely off; after that I had to run past engine, which passed slowly, and get on front end as it was going, to throw switch when I got there; it was always my custom to do this way in switching. Where I fell in between this railroad track was a deep hole made by scooping out ashes. I could not get on engine as soon as first trucks were off turn-table because there was no one there to hold table firm for engine to get off; I could not leave it so."

V. P. Giddings testified for plaintiff: "I know Mr. Murphy; work for the C. and A. I know the ground between

the two tracks by the ash pit; it is either a hole or a ridge; they throw the ashes from the pit in there and then take it out on cars, and it takes a short time before the hole is filled again. That hole is not very deep when first taken out; probably two feet deep. It extends from one track to the other, probably eight feet; when the ashes are taken out it leaves a hole there."

On cross-examination this witness says: "I am an engineer at work there; this hole near this ash pit is a necessary arrangement; I should judge it was; every round house has it. When first truck of an engine comes off turn-table it is not always safe to let go; it depends on how it is built; don't think it would be safe to let engine 28 off. That engine does not have what is called a cow-catcher; it has a board and hand rail."

Frank Hines testified: "I know condition of ground between tracks opposite ash pit. They had a hole at ash pit, to clean ashes into. There was a hole there when Murphy was hurt; there were some ashes in it."

The evidence introduced on behalf of appellant does not materially differ from that of appellee.

This proof wholly fails to support the allegations of the declaration in two essential particulars. First, there is no proof of negligence on the part of the appellant, and second, there is an entire absence of proof of due care on the part of appellee. The reversal of this case might therefore properly be placed on either one of the above grounds. All of the evidence introduced on that branch of the case proves that the hole into which appellee - slipped was necessary and proper for the hauling and management of appellant's locomotives, and hence it was not negligence to have it there.

Appellee does not pretend that it was any part of his duty to board the moving locomotive, nor that it was necessary for him to do so in order to discharge his duty, and it was therefore negligence on his part to attempt to jump on the engine while in motion. The fact that it was convenient for him to do so, or that it was customary to do so, can not change a negligent act into one of due care and diligence.

The evidence clearly shows—in fact the appellee himself swears—that he was perfectly familiar with the entire situation and in his own language he took the risk.

Surely a man can not be allowed to voluntarily place himself in a position or place of known danger, saying he will take the risk, and then come into court and recover for an injury resulting from that risk.

Exception was taken to the only instruction given on behalf of appellee. By that instruction the court sought to give the jury the law of contributory negligence. No benefit could result from a critical examination of the instruction, or an attempt to discuss the doctrine of contributory and comparative negligence. That doctrine has no application to this case, and the instruction was improperly given for the reason that there was no evidence upon which to base it.

While it is true that the degree of appellee's negligence, as compared with that of the appellant, would be a question of fact for the jury in a proper case, the appellant's negligence must have been first established by the evidence. Until that was done there was no basis for comparison.

No importance, however, is attached to the giving of the instruction, as we hold that the judgment must be reversed because it was unauthorized by the evidence.

Reversed.