HADLEY v. THE LAKE ERIE AND WESTERN RAILWAY COMPANY.

[No. 2,082.   Filed Oct. 7, 1898.   Rehearing denied Mar. 8, 1899.]

RAILROADS.—*Unloading Freight.—Personal Injuries.—Contributory Negligence.*—Plaintiff for the purpose of unloading goods from a car backed his wagon up against the car in such manner that any movement of the car was liable to upset the wagon.   The car was coupled to a freight train which was cut in two, and the engine was en-

Hadley *v.* Lake Erie, etc., R. Co.

gaged in switching, the time when the train would couple up being uncertain, all of which was known to plaintiff. The station agent had pointed out the car containing the goods and told him he would have time to unload them. After he had unloaded the goods and got in his wagon, the car in being coupled up was moved, and some part thereof caught the wagon and upset it, injuring plaintiff. *Held,* that the action of plaintiff in placing his wagon in such close contact with the car, in the absence of any statement showing the necessity therefor, was negligence which proximately contributed to his injury, and precluded a recovery. *pp. 676-680.*

SPECIAL VERDICT.—*Interrogatories to Jury.*—Answers to interrogatories in a special verdict in an action for damages on account of personal injuries to the effect that plaintiff's injuries were received without any fault or negligence on his part contributing thereto, and that such injuries were caused by the negligence of defendant, are improper, and should be disregarded. *p. 678.*

NEW TRIAL.—*Time of Application.—Special Judge.*—Where the verdict was not returned on the last day of the term, no error was committed in refusing permission to file a motion for a new trial on the first day of the succeeding term on the ground that the case was tried by a special judge, where the record does not show that the regular judge was disqualified to sit in the case, as the motion could have been filed with the regular judge, and passed upon at a subsequent term by the special judge. *p. 680.*

VENIRE DE NOVO.—*When Granted.*—A *venire de novo* will not be awarded unless the verdict is so defective and uncertain that no judgment can be rendered upon it. *pp. 680, 681.*

From the Tipton Circuit Court. *Affirmed.*

*John F. Neal, Waugh, Kemp & Waugh* and *Gavin & Davis,* for appellant.

*W. E. Hackedorn, Shirts & Kilbourne, John B. Cockrum, W. H. H. Miller* and *John B. Elam,* for appellee.

ROBINSON, J.—Appellant sued appellee to recover damages alleged to have been sustained by him while unloading goods from one of appellee's cars. Upon a special verdict returned by the jury the trial court rendered judgment in appellee's favor. The errors assigned call in question the action of the court in rendering judgment in appellee's favor on the special ver-

dict, in overruling appellant's motion for a *venire de novo,* and in refusing to permit appellant to file a motion for a new trial.

Whether appellant was guiltless of negligence proximately contributing to his injury depends upon the law applicable to the following facts as found in the special verdict:   A stock of merchandise and groceries was shipped to appellant, at Cicero, Indiana, on appellee's road, arriving in the forenoon of the 31st day of March, 1894, in a car which was placed on a side-track, the usual place of unloading freight at said station.   At the time of the accident there was a passenger train and a freight train on the side-track containing said car, both of said trains bound south, and about the time of the accident a train was due from the south.   Said side-track was the passing point for two or more trains at or near the time of the accident which fact was known to appellant at the time. Appellant had been familiar with the location of the tracks at said place for ten years prior to the time of the accident.   Appellant knew that the car containing his goods was coupled to a freight train which was cut in two, the locomotive being engaged in switching, and he knew that the time when the train would couple up was uncertain.   In the afternoon of said day appellant drove to the car, and backed his wagon up to the car in such close contact therewith that any ordinary movement of the train in coupling up was liable to upset the wagon.   There was an iron step or ladder on the side of the car next to the wagon. After appellant had finished unloading his goods, and had gotten out into the wagon, the train was coupled up, and the car moved so that the iron step or ladder or some part of the car·caught the wagon, and upset it, throwing appellant to the ground, and injuring him.

Certain interrogatories were submitted to the jury, and answered by them, to the effect that appellant's injuries were received without any fault or negligence on his part contributing thereto, and also that appellant's injuries were caused by the negligence and carelessness of appellee. Such interrogatories and answers are not proper in a special verdict, and are to be disregarded in considering the verdict. *Board, etc.,* v. *Bonebrake,* 146 Ind. 311.

The verdict shows that appellant was directed by appellee's agent to the car containing his goods. The verdict does not show that the agent told appellant that he would have plenty of time to get his goods out of the car before any train or cars would move upon the side-track; and in answer to a direct question to this effect the jury refused to answer the question directly, but said that the agent told appellant "that he had time to get his goods out of the car." The jury simply answered that the agent told appellant that the car was on a certain track, and that he would have time to unload it, and by the above answer they, in effect, negatived the proposition that the agent said appellant would have time to unload the car before any train or car would move it, because they refused to answer that question directly. In this connection the fact must be borne in mind that appellant knew that the car was coupled to a freight train, and that the time when the train would couple up was uncertain. The extent to which appellant could rely upon this opinion of the agent must be determined from the facts and circumstances at the time surrounding him, and of which he had notice. The facts which he was bound to observe indicated the proper line of conduct, and he had no right to ignore such facts, and rely wholly upon the assurance of the agent. But, even if we should admit that he had the right to and did rely

upon this opinion of the agent, it appears from the verdict that the agent was right, and that appellant did have time to unload his goods, and that he had actually unloaded them, and had left the car, when injured. He was not injured while in the car or while leaving it, and would not have been injured at all had he not had his wagon in contact with the car. The jury found it was necessary for appellant to place his wagon near the car, but appellant has not shown that it was at all necessary for him to place his wagon as he did place it in order to unload his goods. He knew the conditions surrounding him, that the time when the cars would be coupled up was uncertain, and that when coupled up this particular car was liable to be moved. With knowledge of these facts, he placed his wagon—whether necessarily or not he has not shown—in such contact with the car that any slight movement of the car was liable to upset the wagon. Such act, unexplained in any way on his part, was negligence which proximately contributed to his injury, and precludes a recovery.

Counsel for appellant cite the case of *Pittsburgh, etc., R. Co.* v. *Ives,* 12 Ind. App. 602. But in that case there was a general verdict, and it does not appear what the facts were. The discussion in that case is wholly as to whether answers to interrogatories necessarily destroyed the general verdict. It does not appear what the evidence in that case disclosed. No one doubts the general principles of law declared in that opinion. There having been a general verdict in that case and it not appearing what the facts were, the case gives no assistance in determining the questions involved in the case at bar. Counsel also cite the case of *Toledo, etc., R. Co.* v. *Hauck,* 8 Ind. App. 367. The opinion in that case contains quite a full statement of the facts, and we have no fault to find with the law

applied to the facts therein stated. But a comparison of the facts bearing upon the question of contributory negligence in that case with the facts upon the same question in the case at bar will show many points of dissimilarity. The conditions existing at the time, the circumstances under which the accidents occurred, the knowledge of such conditions and circumstances possessed by the parties injured, are clearly distinguishable in the two cases. The law applicable to one is not necessarily controlling in the other. The two cases present an essentially different state of facts. The case cited was correctly decided upon the facts, and the case at bar must be determined by its own facts and decided upon them.

Appellant has also assigned as error the refusal of the court to permit him to file a motion for a new trial. The case was tried at the September term, 1895, of the Tipton Circuit Court, and the verdict was not returned on the last day of that term of the court. The motion for a new trial was not offered to be filed until the next succeeding term of court. The case was tried by a special judge, but the record does not show that this was because the regular judge was disqualified to sit in the case. The motion for a new trial could have been filed at any time before the close of the term, while the regular judge was presiding, and could have been passed upon at a subsequent term by the special judge. No excuse is shown for not having so filed the motion. Section 570, Burns' R. S. 1894 (561, Horner's R. S. 1897); *Jacquay* v. *Hartzell*, 1 Ind. App. 500; *Shaffer* v. *Milwaukee Ins. Co.*, 17 Ind. App. 204.

There was no error in overruling the motion for a *venire de novo*. The special verdict is not ambiguous nor uncertain. It contains a full and fair statement of every fact submitted to the jury. It is well settled that a *venire de novo* will not be awarded unless the

verdict is so defective and uncertain upon its face that no judgment can be rendered upon it. *Bower* v. *Bower*, 146 Ind. 393; *Board, etc.,* v. *Pearson,* 120 Ind. 426; 16 Am. St. 325, and cases there cited; *Wysong, Ex.,* v. *Nealis,* 13 Ind. App. 165.

There is no error in the record for which the judgment should be reversed, and it is, therefore, affirmed.

## CONCURRING OPINION.

WILEY, J.—I concur in the majority opinion of the court in holding that the facts found by the special verdict clearly show that appellant was guilty of negligence contributing to his injury, and for this reason cannot recover. Robinson, J., speaking for the majority, says that this case is clearly distinguishable from the case of *Toledo, etc., R. Co.* v. *Hauck,* 8 Ind. App. 367, but he does not, at any length, point out the difference between the two cases; and, as there is such a wide distinction between them, and as appellant relies largely on the Hauck case for a reversal, I desire to express my personal views in relation thereto. First, however, I want to point out the material facts which distinguish the two cases.

In the case at bar there is no finding that any one of appellee's agents or servants knew that appellant was at or in the car unloading his goods, at the time of the accident. In the Hauck case, it was known that appellee was in the car, and there at the express direction of appellant's agent. In that case a car had been placed on the side-track at a way-station, for the use of appellee, in which she was going to ship some household goods. She was directed to the car by the station agent, and was told to hurry, and get her goods loaded. At the time she went to the car to load her goods there was no other car on the side or main track, and no train in or about the premises. She was

unfamiliar with the surroundings, and the time trains passed the station. While she was loading her goods, a freight train passed on the main track, the side door of her car next to the main track being closed. The jury found as a fact that when said freight train passed the car in which appellee was at the time it passed on and out of her hearing, and that "she had reason to believe, and in good faith did believe, and, so believing, did rely thereon, that said train, after its movement beyond her hearing, continued on its way eastward, and, being wholly ignorant that said train would be backed upon said track and against said car, thereby endangering her life and limb, she remained in said car," etc.

It will be observed from these findings that there is a total absence of any fact that she had any knowledge of approaching or impending danger, while, on the contrary, there is an express finding that she believed, and had good reason to believe, and, so believing, did rely thereon, that the train, after it had moved beyond her hearing, had continued eastward on its way, and that she was wholly ignorant that it would be backed on the side-track and against her car. After such a finding of facts, it was a correct announcement of the law to hold that she was thus lulled into danger, and the appellant was bound to protect her while she was so situated. But how materially different, are the facts in the case in hand. The appellant here knew of the danger he was in. He saw the freight and passenger trains on the tracks. He saw the process of switching as it was being done, and knew that it was uncertain when the train would back up and couple onto the car from which he was unloading his goods. Thus it affirmatively appears, that he was fully aware of the impending danger, and yet he took no precautions to avert it. The jury found that after reaching

the car, and being in full possession of all the facts, constituting the danger, he did not even take the precaution to look up and down the track at the moving train. Then another broad distinction between this and the Hauck case is this: In the latter case, the station agent knew that Mrs. Hauck was in the car, loading her goods, while in the case at hand, there is an express finding, that neither the appellee's station agent, conductor, nor any other servant had any knowledge that appellant was in the car when the train was being backed up against said car. In *Toledo, etc., R. Co.* v. *Hauck, supra,* Rinehard, J., speaking for the court said: "The mere knowledge of the fact that a freight train had arrived and passed the box car on the main track was no notice to her that such train would enter the side-track and endanger her safety by being pushed violently against the car in which she was lawfully engaged in her work of putting away the goods. *She was not bound, under such circumstances, to leave the car and watch the movements of the freight train.*" (The italicizing in the above quotation is my own.) Mark the guarded and well measured language of the learned judge who wrote the opinion. "She was not bound under such circumstances," he says, "to * * * watch the movements of the train." What circumstances? Unquestionably the circumstances, that all the facts and surroundings presented to her mind and view. Such facts presented to her mind a state of circumstances that clothed her with perfect safety, while she was engaged in her duties. Suppose when she went to the car on the side-track, under the direction of the station agent, there had been a live freight train on the track, engaged in switching; that a passenger train was also at the station waiting for another passenger train to pass, which was then due; that it was uncer-

tain when the freight train would back up against her car, and she had full knowledge of all such facts, then the "circumstances" surrounding her, would have been radically different from what they were, and the language I have just quoted would not have been applicable to the case, and, I dare say, would not have been used.

The rule for which appellant contends, carried to its logical conclusion, would lead to confusion, and in many instances become the tool for working manifest injustice and great hardship. If the rule for which appellant contends is a correct one, then a person may place himself in imminent peril, with a full knowledge of impending danger, and in case of injury resulting from the negligence of another he may recover therefor, notwithstanding the wholesome and long established doctrine that contributory negligence is a complete defense to such recovery. In other words, if appellant had gone to the car to unload his goods, under the exact facts as they are presented in this case, with the exception that, instead of the switching of the train at the far end of the switch, it had then been backing down, and was rapidly approaching the car, yet applying the rule as contended for, he could still recover. So to declare the law would be in a measure to abrogate the rule governing contributory negligence, and be a reproach upon courts. The rule that has so long obtained, should not be relaxed. Granting that appellee's station agent told appellant that he would have plenty of time to remove his goods from the car, before the freight train would back down against it (and yet I insist there is no express finding of such fact), and by reason of such direction he had a right to rely upon protection from injury, still the facts found are insufficient to support a judgment for appellant. The jury found that some of the

articles of merchandise in the car, were heavy, and that it was necessary for him to drive his wagon close to the car, so as to unload them. There is no finding that it was necessary for him to place his wagon in such close proximity to the car that any movement of the car would upset it. Yet this is just what he did, and the jury so find. Had he not done this, no injury would have resulted, for it appears from the finding of the jury, that he had removed all of his goods from the car to the wagon, and had left the car, and entered the wagon, before the train backed against the car. So, as a matter of fact, he had removed the goods, and his injury resulted from the upsetting of the wagon, and that occurred on account of his own negligence in placing his wagon in a dangerous position. There is another distinguishing feature between this and the Hauck case. In that case, at the time of the injury, appellee was alone in the car. No one was outside of the car, in her employ, to warn her of approaching danger, while in this case appellant's servant was in the wagon all the time the goods were being unloaded, and was in full view of the approaching train, for, as the jury found, there were no obstructions to obscure the view. In such case the knowledge of the servant will be imputed to the principal.

There is another well grounded rule of law, that should not be lost sight of in a case of this character, and that is the knowledge of appellant of the apparent danger surrounding him. Mr. Beach, in his excellent work on contributory negligence, says:

"Knowledge on the part of the plaintiff as to the danger to which he is exposed, or, what is the same thing in law, a legal obligation to know of it, is an essential element in the case, when contributory negligence is the issue. The law holds no one respon-

sible for exposing himself to a danger of which he knew nothing, and of which he was under no obligation to inform himself. We must use ordinary care and prudence to avoid the ordinary and usual perils that beset us, but we are not bound to guard against those which we have no reason under the circumstances to suspect. Hence knowledge of the probable danger, or a sufficient reason to apprehend it, is essential to constitute contributory negligence." Beach on Contributory Negligence, section 36. There is a long line of authorities in harmony with this doctrine, of which we cite the following: *Wall* v. *Town of Highland*, 72 Wis. 435, 39 N. W. 560; *Pennsylvania, etc., Co.* v. *Varnau* (Pa.), 15 Atl. 624; *Moomey* v. *Peak*, 57 Mich. 259; *Jeffrey* v. *Keokuk, etc., R. Co.*, 56 Iowa 546; *Langan* v. *St. Louis, etc., R. Co.*, 72 Mo. 392; *Gray* v. *Scott*, 66 Penn. St: 345. Again Mr. Beach says: "While it is unquestionably true that one may voluntarily and unnecessarily expose himself, or his property, to danger, without thereby becoming guilty of contributory negligence as matter of law, it is, nevertheless, an established rule that, where one does knowingly put himself or his property in danger, there is a presumption that he *ipso facto*, assumes all the risks reasonably to be apprehended from such a course of conduct." Beach on Contributory Negligence, section 37. The rule that one cannot place himself in a position of danger, and recover for an injury resulting therefrom is firmly established and strongly intrenched by the authorities. *Chicago, etc., R. Co.* v. *Murphy*, 17 Ill. App. 444; *Schoenfeld* v. *Milwaukee, etc., R. Co.*, 74 Wis. 433, 43 N. W. 162; *Allen* v. *Johnson*, 76 Mich. 31, 42 N. W. 1075; *Goldstein* v. *Chicago, etc., R. Co.*, 46 Wis. 404. It has been held, and, I think correctly, that a party cannot knowingly expose himself to danger, and then recover damages for

an injury which he might have avoided by use of a reasonable precaution. *Lake Shore, etc., R. Co.* v. *Clemens*, 5 Ill. App. 77; *Palmer* v. *Dearing*, 17 Weekly Dig. (N. Y.) 145; 4 Am. & Eng. Enc. of Law, p. 56; *Morrison* v. *Board, etc.,* 116 Ind. 431; *Travis* v. *Town of Carrolton*, 7 N. Y. Supp. 231; *Splittorf* v. *State*, 108 N. Y. 205.

In *Clark et al.* v. *Wright*, 79 Fed. 744, it was held that one whose negligence is one of the proximate causes of his injury cannot recover damages from another, even though the negligence of the latter also contributed to it, and was the more proximate cause. See, also, *Chicago, etc., R. Co.* v. *Hoedlings, Adm.*, 10 U. S. App. 422, 3 C. C. A. 425, 53 Fed. 61; *Missouri, etc., R. Co.* v. *Moseley*, 12 U. S. App. 601; *Reynolds* v. *Great Northern, etc., R. Co.,* 32 U. S. App. 577; *Scofield* v. *Chicago, etc., R. Co.,* 114 U. S. 615; *Hayden* v. *Missouri, etc., R. Co.,* 124 Mo. 566.

The case of *Wherry* v. *Duluth, etc., R. Co.*, 64 Minn. 415, 67 N. W. 223, is in point here. In that case appellant approached a street crossing, and found it blocked by a freight train. It was apparent to him that the train was liable to start at any moment, and after waiting some time, he attempted to cross by climbing up between the cars, about 250 feet from the engine, and was injured by the train suddenly backing up, without giving any signal or warning. It was held that he could not recover. The court in speaking of the facts as stated, said that: "It was apparent that it (the train) might start at any time, and, if it should, the risk and danger were open and notorious. On these facts it must be declared that there was a want or ordinary care upon plaintiff's part, contributing to the injuries received, as a proximate cause thereof, without which the injuries would not have occurred." The court further said: "The fact that a

danger is known will preclude a recovery, in case of injury, when it is apparent and imminent,  *  *  *
One has no right to cast himself upon a known danger, where the act subjects him to imminent and great peril."

If, in the case from which I have just quoted, the appellant had been directed by an agent of appellee to do just what he did do, and had been assured that he could do so in safety, the case would have been parallel to the one in hand. Yet would it be contended by any one that such direction and upon such assurance, appellant would have been relieved from responsibility? I think not. In the case at bar appellant was fully aware that the freight train, to a part of which the car from which he was unloading his goods was attached, was likely to back up and couple to his car at any moment; and in the case of *Wherry* v. *Duluth, etc., R. Co., supra,* it was apparent to appellant that the train might start at any time. In this respect the two cases are analogous. It has been held in many cases that a railroad is a menace of danger. See *Wherry* v. *Duluth, etc., R. Co., supra,* and cases there cited. And, being a place of danger, a person who is mentally accountable cannot voluntarily place himself within its dangerous environments and perilous surroundings, and in case of injury resulting from the negligence of its servants, recover for damages sustained.

Recurring again to the Hauck case, *supra,* there was an allegation in the complaint and a finding by the jury that appellee had no knowledge or notice of the approaching train so backed in upon the side-track, and that no means were afforded her to learn or know of its approach. So in these material and essential facts this case is clearly distinguishable from that. Here appellant did have the means of knowing, and

in fact the jury found that he did know, that the train was liable to move at any moment, and back up and couple onto his car.

Under the authorities and upon sound reasoning the facts found are, in my opinion, wholly insufficient to support a judgment in favor of the appellant, and the conclusion reached by the majority of my associates is correct.

### DISSENTING OPINION.

COMSTOCK, J.—Believing that the majority opinion in this cause does not correctly express the law as heretofore announced by the Supreme and this Court, I deem it proper briefly to express my dissent to the action of the majority of the court. The special verdict clearly shows that the defendant corporation was guilty of negligence. It remains only to consider whether the plaintiff was himself guilty of negligence approximately contributing to his injury. In the opinion of the writer, the facts found by the jury affirmatively show that he was free from fault. Upon the authority of *Toledo, etc., R. Co. v. Hauck*, 8 Ind. App. 367, and cases there cited, appellant is entitled to judgment.

The facts found decisive of the question are in answer to the following interrogatories: "Was the car containing said articles of merchandise and groceries side-tracked by defendant upon the principal switch of said town of Cicero? Answer, "Yes." "Did the plaintiff drive to said defendant's local office and station at said town of Cicero in the afternoon of said day of the 31st of March, 1894, and inquire of defendant's agent at said office concerning said goods and merchandise? Answer, "Yes." Did defendant's agent, in answer to such inquiry of the plaintiff, in-

form the plaintiff that the same was in the car of the defendant standing on the side-track or switch?" Answer, "Yes." "Was the side-track or switch the usual place of unloading freight at said station or town?" Answer. "Yes." "Did said agent direct the plaintiff to drive around to said car, and unload said articles and groceries therefrom into his wagon?" Answer. "Yes." "Did said agent further state to the plaintiff at the time that he would have ample or plenty of time to get the same before any train or cars were moved upon said side-track?" Answer. "We, the jury, find from the evidence that the agent told the plaintiff that he had time to get his goods out of the car." "Did the plaintiff follow such instructions, and rely upon the same, and immediately drive around to said car for the purpose of unloading said goods?" Answer, "Yes." "When the plaintiff first started from the freight station to the car containing his goods, did the defendant, or any of the agents, direct him so to do?" Answer. "The evidence shows that the plaintiff received information when said plaintiff paid the freight, that said plaintiff's goods were in the car on the defendant's side-track and when said plaintiff got around to Jackson street that the freight agent directed the said plaintiff to the car in which plaintiff's goods were."

The jury further found that the plaintiff and his assistant drove their wagon immediately to the car designated, and worked as diligently and rapidly as possible to remove the goods, and just as the work of transferring the goods from the car to the wagon had been completed, and before the plaintiff had time to drive away from the car, the employes of the defendant in charge of the locomotive of defendant carelessly, without any warning to appellant, ran a train of freight cars against the car from which he had re-

moved his goods, resulting in the injury for which he sues. The facts thus found show that a consignee of freight paid the charges thereon of the common car-rier at the place of delivery, and is directed by its proper agent to the car side-tracked at the usual place for unloading goods, and is informed by said agent that he would have time to get his goods out before the car would be moved; that, relying upon this information, he went to work immediately, with his assistant, with all possible diligence, and did remove the goods from the car to his wagon, but, before he had time to drive away, was, by the fault of the defendant's employes injured.

The learned judge who wrote the opinion attaches importance to the fact that the jury did not say that plaintiff was told that he had ample or plenty of time in which to get out his goods, but that he was only told that he had time. We submit that plaintiff could only have understood by this statement, under the circumstances, that he had time to accomplish his work. If plaintiff had time to remove his goods by the exercise of ordinary diligence, it was all the time he required, and he was informed that he had this time by one upon whom he had the right to rely, and upon whose instructions he acted. We think that it cannot be reasonably held that the statement made by appellee's agent to appellant that he would have time to remove his goods meant that he would have time to put them in his wagon, but not to get away with the wagon before the train moved. The majority opinion holds that the fact that appellant had the end of his wagon against the car, unexplained, was negligence. The jury found that it was necessary to place the wagon near the car. That it was necessary to put the end of the wagon against the car could have no better explanation than the finding that

among the articles to be unloaded was a barrel of sugar and a barrel of vinegar.

The defendant company was under special obligations to protect the appellant from injury. Its employes had induced him to enter into a place of danger. The case is not distinguishable in principle from that of *Toledo, etc., R. Co.* v. *Hauck, supra.* Appellant had been lulled into a feeling of security by the agent of the company, as had been the plaintiff in the case last named, in which the court said it was the duty of the railroad to furnish to persons lawfully upon its tracks, "engaged in loading or unloading freight, protection from injury by approaching trains or locomotives. In such cases, a person having business with the company of the character indicated, has a right to occupy a position designated by the agent of the company, even if such position be hazardous, and to rely upon the diligence of the company to protect him from danger." See *Howe* v. *Ohmart*, 7 Ind. App. 32; *Pittsburgh, etc., R. Co.* v. *Ives*, 12 Ind. App. 602; *Wabash, etc., R. Co.* v. *Locke, Adm.*, 112 Ind. 404; *Louisville, etc., R. Co.* v. *Schmidt*, 147 Ind. 638; *Cleveland, etc., R. Co.* v. *Keely*, 138 Ind. 600.

The judgment of the trial court should be reversed. Black, J., took no part in this decision.