POTTLITZER ET AL. *v.* CITIZENS TRUST COMPANY, RECEIVER, ET AL.

[No. 8,521. Filed March 5, 1915. Rehearing denied June 22, 1915. Transfer denied November 5, 1915.]

1. JUDGES.—*Special Judges.*—*Appointment.*—The record relating to the appointment of a special judge showing that the regular judge, being interested in the cause, by agreement of the parties appointed such special judge, who took the oath of office and assumed jurisdiction, affirmatively discloses that such special judge obtained jurisdiction of the cause in the manner provided by §427 Burns 1914, Acts 1907 p. 108. p. 59.

2. JUDGES.—*Special Judges.*—*Appointment.*—*Waiver of Objections.* —As a general rule all objections to the appointment of a special judge are waived if not made at the time of the appointment, except where the complaining party was not brought into the case until after the action is taken, but in such event the objection of such party is not available unless made upon his first appearance. p. 59.

3. APPEAL.—*Questions Presented.*—*Motion for Change of Venue.*— No question was presented on alleged error in overruling a motion for change of venue, where, aside from a copy of the assignment of errors, no mention of such error was found in appellants' brief, and no motion for change of venue or ruling thereon was disclosed by the record. p. 60.

4. RECEIVERS.—*Objections to Order for Distribution.*—*Review.*— Alleged error directed to the action of the court in sustaining a receiver's petition for distribution is not presented by the overruling of a petition to set aside the order of distribution filed long after the distribution had been made and approved, there having been no objection and exception to the ruling on the receiver's petition. pp. 60, 62.

5. RECEIVERS.—*Report.*—*Order for Distribution.*—Where a receiver reported on every claim filed and showed that he had a balance of cash on hand, and that in his opinion a dividend of sixty-five per

cent could be properly declared, such report, in the absence of any exceptions filed thereto, warranted the court in granting an order of distribution thereon.   p. 61.

6.   APPEAL.—*Review.*—*Questions of Fact.*—Alleged error in the overruling of appellants' motions to set aside the order of distribution made in a receivership matter can not work a reversal, where the record discloses that such motions were met by the receiver's verified answer and that evidence was heard, on which the court found that the answer was true, and that appellants had at no time filed their claim with the court or receiver.   p. 61.

7.   APPEAL.—*Parties.*—*Record.*—*Right to Allege Error.*—The overruling of motions to set aside an order of distribution in a receivership case, made by persons affirmatively shown to have been strangers to the record is not available on appeal.   p. 62.

8.   APPEAL.—*Assignment of Errors.*—*Conflict With Record.*—No question is presented by the assignment that the court erred in refusing to hear and consider the intervening petitions of appellants, where the record does not show such a refusal, but shows that no such petitions had been properly filed in the court.   p. 62.

9.   JUDGES.—*Special Judge.*—*Authority.*—*Jurisdiction of Regular Judge.*—Where a special judge was regularly appointed and qualified and assumed jurisdiction in a receivership case, he acquired full authority over the case throughout all its stages to the exclusion of that of the regular judge, and, in the absence of a showing that the special judge was incapacitated or refused to act, the regular judge was without authority to receive a petition to intervene in the case.   (*Hadley* v. *Lake Erie, etc., R. Co.* [1899], 21 Ind. App. 675; and *Chicago, etc., R. Co.* v. *Cunningham* [1904], 33 Ind. App. 145, distinguished.)   p. 63.

10.   RECEIVERS.—*Intervention by Creditors.*—*Discretion of Court.*—Creditors desiring to intervene in receivership proceedings must do so under §273 Burns 1914, §272 R. S. 1881, by first procuring leave of court, and the application or motion for such leave calls for the exercise of judicial discretion and must be presented to the judge lawfully presiding in the receivership proceeding.   pp. 65, 66.

11.   RECEIVERS.—*Dividends.*—*Duty of Creditors.*—To entitle a creditor to a dividend in a receivership proceeding, it is not enough that the receiver be put upon inquiry as to the claim, but such creditor must file proof in itself satisfactory.   p. 66.

12.   RECEIVERS.—*Nature and Effect of Proceedings.*—A receivership proceeding is not purely *in rem*, and neither the acts of the receiver nor the orders of the court are binding on persons not parties to the proceeding, nor will the appointment of a receiver generally affect or divest an existing lien.   p. 66.

13.   RECEIVERS. — *Rights of Creditors.* — *Intervention.* — *Laches.*—Where it appeared that a creditor had notice of the time fixed by the court for the filing of claims in a receivership proceeding, and through her attorney informed the receiver that her claim would

not be filed, the action of the court in disallowing her petition to intervene and have her claim allowed, presented more than two years after the receiver was appointed and more than a year after the time fixed for filing claims and after distribution was made, was not an abuse of the discretion vested in the court in such matters. p. 67.

14. APPEAL.—Jurisdiction.—Appeal from Interlocutory Orders.— Jurisdiction of an appeal from an interlocutory order is in the Supreme Court only. p. 68.

From Superior Court of Allen County; *John Morris*, Special Judge.

Action by Samuel S. Messing against the Fort Wayne National Furniture Company for the appointment of a receiver, in which, subsequent to the distribution made by the receiver therein appointed, Hannah Pottlitzer and others sought to file intervening petitions. From the judgment rendered, the petitioners appeal. *Affirmed.*

*M. S. Meyberg* and *Robert B. Dreibelbiss*, for appellants.

*Benj. F. Heaton, Frank S. Roby, Elias D. Salsbury, Ward H. Watson* and *Sol. H. Esarey*, for appellees.

HOTTEL, C. J.—The questions which appellants attempt to present by this appeal relate to certain rulings made by the trial court in a suit brought January 10, 1910, by Samuel S. Messing, as a stockholder, against the Fort Wayne National Furniture Company, hereinafter referred to as the furniture company, for the appointment of a receiver, to which suit appellants were not made parties. It will be necessary to an intelligent presentation of such questions to indicate the various steps taken in said suit. The furniture company, by its attorney, Mitchel S. Meyberg, and its president, Abraham L. Messing, appeared to such suit and admitted that notice thereof had been served on it and that the averments in the application were

true. The cause was submitted to the court for trial, with the result that the Fidelity Trust Company of Indianapolis was appointed receiver and duly accepted and qualified as such. On January 18, 1910, the trust company filed its petition to continue the business of the corporation until such time as its property could be fully and finally disposed of, and the court having heard the evidence on. the petition, made an order containing the following provision: "*It is therefore ordered by the court * * * that said property shall be sold free from liens of every character, and that all liens and claims whatsoever shall be transferred to the fund received from the sale of said merchandise, and the collection of the outstanding accounts * * * . That the receiver is ordered to notify all creditors of the * * * furniture company to file their claims with him on or before the first day of March, 1910.*" (Our italics throughout.) On May 3, 1910, the trust company filed its report and resignation as receiver. The court found the report correct, made allowances for the receiver and its attorney, Mitchel S. Meyberg, and accepted such resignation. The parties agreed to and requested the court to appoint the Citizens Trust Company of Fort Wayne as receiver, to succeed the Fidelity Trust Company. The regular judge disqualified himself and appointed Samuel L. Morris as special judge in such cause. On the same day the special judge duly qualified and assumed jurisdiction of the cause and appointed the Citizens Trust Company, hereinafter referred to as appellee, as receiver, and it accepted the appointment. On May 31, 1910, the Fidelity Trust Company filed the receipt of appellee for the property of the furniture company and it was thereupon finally discharged as such receiver. On the same day the Hamilton National

Bank of Fort Wayne, hereinafter referred to as the bank, filed its claim with the court alleging that the furniture company was indebted to it in the sum of $6,088.90, evidenced by five promissory notes, past due and unpaid; that as collateral security for said loan it had received from the furniture company twelve bonds of $500 each, a part of forty bonds to be issued and secured without priority or preference by a mortgage on the personal property of such company, which mortgage is a first lien on all the property now owned or held by the receiver. This claim also disclosed that thirty-three of such bonds were issued and that the appellants were the holders of the bonds not held by the bank, as collateral. The bank asked that an accounting be had as to the amount due, and also asked for a foreclosure of the collateral security, and, in the event the property be sold free from liens, that the amount of its indebtedness be declared a first lien on the proceeds.

On June 22, 1910, Samuel L. Morris refused to act further as special judge and resigned. By agreement of the parties, the regular judge appointed John Morris as special judge in said cause and he qualified as such and assumed jurisdiction. On the same day the receiver filed an answer to the bank's claim. The claim was then submitted to the court and it found that there was due the bank, $6,241.15; that the bank held as collateral security for the payment of said sum, twelve bonds of par value of $500, each; that in addition to the bonds so held by said bank there were outstanding twenty-one additional bonds of $500, each, all of which were of the same issue; that "*all of said bonds which were lawfully issued*" were by the furniture company secured by chattel mortgage or trust deed upon all

the assets of such company then in the possession of the receiver; "*that each of said bonds which may have been lawfully issued is an equal and first lien,* excepting taxes and costs of administration of this estate," on all assets in the hands of the receiver, and entitled to share *pro rata* in the distribution.

On July 11, 1910, the court rendered judgment for the bank for that amount and adjudged and decreed that it lawfully held the twelve bonds as collateral to secure the payment of such sum, the payment of which bonds was secured by chattel mortgage upon all the assets of the furniture company in the hands of the receiver, "which bonds so held by (the) * * * bank * * * together with twenty-one additional bonds of like amount which are outstanding, and which have been lawfully issued (*no attempt being hereby made to adjudicate the validity of the issuance of said twenty-one additional bonds*) and said deed of trust or chattel mortgage securing the same, constitute and are a first lien on all of the assets of the defendant company." The court further adjudged that the bank, as holder of the twelve bonds, was entitled to receive from the receiver its *pro rata* share, or 36.36 per cent of the money in the custody of the receiver, and the receiver was directed to pay that amount to the bank from the funds in its hands and in like proportion until the bank was paid, but in no event to exceed $6,241.15, etc.

At the November election, 1910, the Honorable Carl Yaple was elected judge of the Superior Court of Allen County, and shortly thereafter qualified and entered on the duties of his office. Under the entry of the proceedings had in said cause on December 14, 1910, the following appears: "Comes now Josie Harding, Dora Meyberg, Emma Messing, Sarah Stern, Essie Rice, Mayer Messing, Hannah

Pottlitzer and Della Pottlitzer Messing (which parties have been and will hereafter be referred to in this opinion as appellants), and each file intervening petitions herein, which petitions are in these words: "The record here sets out the several petitions and *such proceedings are signed by* "*Carl Yaple, Judge.*"

The petitions are lengthy and are all substantially the same except as to the name of the petitioner and the number of the bond or bonds on which the petitioner bases his claim. Each petitioner sets out a copy of the bond or bonds held by him or her and avers all the facts connected with the issuance of said bonds and the execution of the mortgage or trust deed given to secure them, substantially, as alleged in the bank's petition. The facts alleged in each of such petitions show an indebtedness in favor of the petitioner on account of the bonds held by him or her and that such bond or bonds are a part of the same issue as those held by the bank and are secured by the same mortgage which was a first lien on all the property of the furniture company, and a first lien on all the assets of such company in the hands of the receiver.

On January 9, 1911, the receiver filed a petition for partial allowance for its services and for services of its attorneys which petition was granted and it was further ordered by the court "that said receiver give notice to creditors to file verified claims with the receiver or in court on or before January 30, 1911." On February 16, 1911, the receiver filed an additional inventory and appraisement and also filed proof of publication of notice to creditors to file claims and a current report of receipts and disbursements and a report of claims filed with it, together with its recommendation as to allowance thereof, and prayed for "such order as the court

deems proper relative to the allowance of the claims of the several creditors hereinbefore mentioned and the payment of a dividend thereon." The court, upon this showing ordered the receiver "to pay a dividend of 65 per cent, on the amounts of said claims * * * from money in its hands," as shown by its report.

On March 22, 1911, the following entry appears: "Samuel M. Messing vs. Fort Wayne National Furniture Company. Comes now the parties and the order herein of date of December 14, 1910, relating to the filing of the intervening petitions by (here follows the name of each appellant) was made at the request of the clerk of court by the regular judge thereof, said entry was made through inadvertence and by mistake, as the regular judge of this court had no jurisdiction of this cause. Read and signed in open court, Carl Yaple, Judge."

On June 12, 1911, the appellants appeared and filed their petition before the Honorable John Morris, Special Judge, asking that the court's order of distribution of 65 per cent, made February 16, 1911, be rescinded and set aside and that the receiver be directed to hold the funds realized by it from the assets of the furniture company, subject to any judgment or allowance which the appellants may hereafter obtain against the same. In this petition appellants set out substantially the same facts set up in their respective intervening petitions, and they further allege, in substance, that such intervening petitions are still pending in this court undetermined; that it is the purpose and intention of the petitioners to prosecute the same to final judgment, and that they are entitled to priority of payment of said mortgage indebtedness and of the bonds held by them over any of the unsecured and general creditors of such furniture company; that

on February 16, 1911, a large number of general claims held against such company were allowed in this court, and the receiver was ordered to pay sixty-five per cent dividend on each of said claims; that the payment thereof would absorb substantially all of the funds in the hands of the receiver and that no further sums will come into his hands sufficient to pay appellants' claims; that as a result, general creditors will wholly exhaust and dissipate the fund which is bound by the lien of appellants' claims. On July 17, 1911, the receiver filed an answer, supported by affidavit to the petition filed June 12, 1911. The answer shows that appellants, Dora Meyberg, Emma Messing, Sarah Stern, Essie Rice and Josie Harding are each sisters of Abe Messing, president of the furniture company; that Della Pottlitzer Messing is his wife; that Mayer Messing is his father; that Hannah Pottlitzer is his mother-in-law; that appellants have all continuously, since the commencement of this cause, been residents of the State of Indiana; that Abe Messing, in addition to being the president of the furniture company, appeared in this court to the complaint of Samuel Messing in this cause, waived the service of process, admitted the averments of the complaint upon which a receiver was appointed, and was employed by the receiver for many months as manager of the business formerly owned by the company; that during said time he repeatedly visited and communicated with each of the above named persons; that Mayer Messing, Hannah Pottlitzer and Della Messing visited and lived with Abe Messing in the city of Fort Wayne; that Mayer Messing visited the former place of business of the furniture company and there consulted with the representative of the receiver; that Dora Meyberg is the wife of Mitchel S. Meyberg who has continuously since the origin of this

proceeding appeared and acted as attorney for each
of the appellants; that a proceeding was instituted in
the United States District Court to have the furni-
ture company adjudged a bankrupt, in which pro-
ceeding Meyberg appeared as attorney for the com-
pany; that, while said matter was pending in the
United States District Court, a consultation was had
between said Meyberg and the attorney for the
petitioning creditors who is now attorney for the
receiver, relative to the validity of the bonds held
by the appellants, and said Meyberg, as such at-
torney, made various proposals for the adjustment
of the bonds held by the appellants and offered a
variety of inducements for the withdrawal of op-
position to their allowance and payment, all of
which were rejected; that an agreement was finally
arrived at, whereby the then receiver resigned and
the proceedings were dismissed in the United States
District Court; that Meyberg again renewed negotia-
tions with the present receiver and its counsel for
some adjustment of the bonds, but the receiver was
unwilling to recommend an allowance of any of
them, except for a nominal sum to equal the cost of
opposing the payment of the same; that in all the
negotiations relative to such bonds the receiver
notified the holders through said attorney that the
payment of said bonds would be "rigidly opposed";
that finally long before this court's order for the pay-
ment of a dividend of 65 per cent Meyberg told the
receiver that the alleged claim of appellants would
not be filed as a claim in this cause; that Meyberg,
as attorney for the first receiver, secured the order
from the court to notify all creditors to file their
respective claims on or before March 1, 1910; that
such notice was given; that on said date Meyberg
was personally notified, as attorney for appellants, to
file their respective claims; that such claims were

never filed; that Meyberg, attorney for appellants, was present in court on May 3, 1910, when the regular judge declined to serve further in this cause, and joined in the agreement and request that the Honorable Samuel L. Morris be appointed as special judge; that Meyberg was also present on June 22, 1910, when the Honorable Samuel L. Morris declined to act further as special judge, and joined in the agreement of the parties that the Honorable John Morris be appointed special judge in this cause; that the Honorable John Morris was appointed and duly qualified as special judge in this cause and has never since relinquished his jurisdiction in this cause; that in the proceedings on June 22, which related to the bond issue, said Meyberg was present and in open court sought to secure from the court "at least an inference" of the validity of the bonds alleged to be held by the appellants, but that the court found only for the bank, whose intervening petition relating to the bonds was then under consideration and said: "No attempt being hereby made to adjudicate the validity of the issuance of said twenty-one additional bonds", which are the bonds alleged to be held by the appellants; that Meyberg knew that the bonds held by the bank had been ordered paid but never demanded of the receiver the payment of either the principal or the interest as it matured on the bonds held by appellants; that no claim has ever been filed with this receiver or its predecessor by either of the appellants; that neither of said parties, prior to the ————— day of June, 1911, ever secured or asked for authority of this court to intervene or file their claims in any form; that the intervening petitions alleged by appellants to have been filed in this cause on December 14, 1910, were not filed with the consent, authority or knowledge of the Honor-

able John Morris, the judge known by the appellants and their attorney, Meyberg, to be the presiding judge in this cause; that they were left on the clerk's desk where they remained several weeks and were afterwards inadvertently, and without authority, noted filed on the issue docket by the Honorable Carl Yaple, the regular judge of such court; that said regular judge, prior to his assuming the office of judge, was general counsel for the receiver herein and was daily consulted relative to the conduct of its affairs, which fact was known to certain of the appellants and their attorney, Meyberg; that on January 9, 1911, the court caused another notice to be given to creditors; that such notice was given and it required the filing of verified claims with the receiver, or in this court, on or before January 30, 1911; that the property was ordered sold free from liens of every character.

On December 8, 1911, the appellants by their attorneys filed their joint and several motion that this cause be remanded to the regular judge of this court, to the filing of which motion the receiver objected on the ground that it was too late. On the same day this motion was overruled and appellants jointly and severally excepted to such ruling. The appellants, by their attorney, Meyberg, then filed their joint supplemental motion, and each appellant by said attorney filed a separate supplemental motion to set aside said order for distribution. On the same day the receiver filed his verified report of distribution with vouchers.

On December 13, 1911, being the twenty-sixth judicial day of the November term, 1911, the receiver's report of distribution filed December 8, 1911, was approved by the court. On the same day the record shows the following entry: "And now the motion of the said (here follows the name of each

appellant) filed herein on the 12th day of June, 1911, and said joint supplemental motion by them this day filed herein and said separate supplemental motions this day filed by them herein to set aside the order of distribution heretofore made herein is submitted to the court for hearing on said motions and on the verified showing of said receiver heretofore filed herein, and the court being sufficiently advised in the premises, finds that the facts stated in said verified showing of said receiver are true; that the petition of the said (naming appellants) for an allowance of preferred claims based on certain bonds alleged to be held by them and referred to in said motion was never filed with the receiver herein, or with this court; that the entry of the filing of said petition by the Honorable Carl Yaple, the regular judge of this court on the 14th day of December, 1910, was invalid, as said judge had no jurisdiction of this cause at the time and was disqualified to act as judge by reason of his connection with the receiver herein and because of his having been of counsel for said receiver prior to his election as such judge; that the court does not find or decide anything as to the right of said parties now or hereafter to file with this court their said claims or as to whether when properly filed, said claims should or should not be allowed; that said petitioners should pay the costs of this proceeding. It is therefore considered and adjudged by the court that said motion filed by said (here follows name of each appellant) on the 12th day of June, 1911, be, and the same is hereby overruled, at the cost of said petitioners, to which ruling each of said parties jointly and severally except. It is further considered and adjudged that said joint supplemental motion of said parties this day filed herein, be, and the same is hereby overruled, at their costs, to which ruling

said parties jointly except. It is further considered and adjudged by the court that said separate supplemental motion of said Emma Messing this day filed herein be, and the same is hereby overruled, at her costs, to which ruling said Emma Messing excepts. (Then follows a like judgment as to each separate petitioner.) And said several petitioners jointly and severally pray an appeal to the Supreme Court of Indiana which is granted."

On February 5, 1912, Emma Messing filed her verified petition to be allowed to intervene and have allowance of claim, which petition on February 16, 1912, was disallowed by the court, to which ruling Emma Messing excepted and asked and was granted sixty days in which to file her bill of exceptions herein.

The appellants jointly assign as error: (1) The court erred in overruling the motion of these appellants to remand this cause to the regular judge of the court. (2) The court erred in overruling the motion for a change of venue from the judge of the court. (3) The court erred in sustaining the petition of the receiver for a distribution to general creditors and ordering the same. (4) The court erred in overruling the petition of these appellants to set aside its order for distribution to general creditors. (5) The court erred in overruling the supplemental motion of these appellants to set aside its order for distribution. (6) The court erred in refusing to consider and hear the intervening petitions of these appellants. (7) The court erred in adjudging that the intervening petitions of these appellants were never filed with the receiver or with the court. A similar separate assignment of error by each appellant was also filed, and Emma Messing in her assignment includes an eighth error as follows: (8) The court erred in disallowing the intervening peti-

tion of Emma Messing asking for the allowance of her claim as a secured debt of the defendant.

It is doubtful whether the first ruling complained of is properly raised by an independent assignment of error. *Citizens St. R. Co.* v. *Shepherd* (1902), 29 Ind. App. 412, 418, 420, 424, 62 N. E. 300, and cases cited in concurring opinion; *Brenner* v. *Heiler* (1910), 46 Ind. App. 335, 91 N. E. 744; *Walb* v. *Eshelman* (1911), 176 Ind. 253, 260, 94 N. E. 566, and cases cited; *Houser* v. *Laughlin* (1914), 55 Ind. App. 563, 104 N. E. 309. Assuming, however, without deciding that such alleged error is properly presented, appellants are in no position to take advantage of it. They were not parties to the action at the time of the appointment of the special judge. The record on the subject of the appointment of special judge is as follows: "Comes now the parties * * * and the regular judge of this court, Hon. Owen N. Heaton, being interested in this cause, by agreement of the parties the Hon. John Morris is appointed as special judge herein. O. N. Heaton, Judge." The record then sets out the oath of such special judge and shows that he assumed jurisdiction of the cause. It thus affirmatively appears from the record that such special judge obtained jurisdiction of said cause in the manner provided by §427 Burns 1914, Acts 1907 p. 108. It is a general rule that objection to the appointment of a special judge must be made at the time of the appointment or when he assumes jurisdiction, otherwise "all objections to the regularity of the appointment shall be deemed waived." *Lillie* v. *Trentman* (1891), 130 Ind. 16, 19, 21, 29 N. E. 405; *Ripley* v. *Mutual Home, etc., Assn.* (1900), 154 Ind. 155, 156, 56 N. E. 89; *Crawford* v. *Lawrence* (1900), 154 Ind. 288, 56 N. E. 673; *Walb* v. *Eshelman, supra.* It seems, how-

ever, that an exception to the general rule obtains where the party complaining of such action was not before the court at the time the action was taken and is afterwards brought into the case. In such a case the new party, upon his first appearance, may object to such appointment and move to remand the cause to the regular judge. *Walb* v. *Eshelman, supra; Houser* v. *Laughlin, supra.* This exception can be of no avail to the appellants in this case, for the reason that they did not object to such appointment on their first appearance, but instead they first filed a motion to set aside the order of distribution made by such special judge. They thereby waived the regularity of his appointment. *Lillie* v. *Trentman, supra; Lewis* v. *Albertson* (1899), 23 Ind. App. 147, 154, 53 N. E. 1071. No question is presented by the second error assigned for the reason that, outside of the copy of the assignment of errors set out in appellants' brief no further mention of such assigned error is found in the brief, and no motion for a change of venue or ruling in relation thereto appears in the record. Rule 22, subd. 5; Ewbank's Manual §§137, 138; *Cleland* v. *Applegate* (1894), 8 Ind. App. 499, 502, 35 N. E. 1108; *Burck* v. *Davis* (1905), 35 Ind. App. 648, 655, 73 N. E. 192; *Starky* v. *Starky* (1894), 136 Ind. 349, 351, 36 N. E. 287.

3. The third assignment of error presents no question for either of two or more reasons: (1) It will be observed that this assigned error is directed to the ruling of the court in sustaining the receiver's petition for a distribution to general creditors, and in ordering such distribution and not to the ruling on appellant's motion to set aside the order. The record shows that this order was made on February 16, 1911; that on December 8, 1911, the receiver filed its formal report of distribu-

tion with vouchers, and on December 13, 1911, the court approved such report and distribution. Appellants never at any time made any objections to the order of distribution, but on June 12, 1911, filed their petition to set aside the order. "An objection by appellant and an exception taken at the time an erroneous ruling was made are essential as the basis for an appeal." Ewbank's Manual §255; §655 Burns 1914, §625 R. S. 1881. The only exception that appellants have saved affecting this question relates to the court's ruling on their petition and supplemental motion to set aside the order for distribution to creditors, which rulings are attempted to be presented by the fourth and fifth assigned errors and will be hereafter considered. (2)

5. The receiver reported on every claim filed and showed that he had a balance of cash on hand amounting to $11,381.35 and "in the opinion of the receiver a dividend of sixty-five per cent could be properly declared." Such report stood as the complaint and, as there were no exceptions filed to it, the facts stated therein were sufficient for the court to grant the order of distribution. *Halsted* v. *Forest Hill Co.* (1901), 109 Fed. 820; *Johnson* v. *Central Trust Co.* (1903), 159 Ind. 605, 65 N. E. 1028; *Bossert* v. *Geis* (1914), 57 Ind. App. 384, 107 N. E. 95.

6. Appellant's fourth and fifth assigned errors can not work a reversal of the judgment below for the reason that the record shows that the questions presented by the petitions and supplemental motions therein referred to were met by the affirmative verified answer of the receiver hereinbefore set out, and that on such answer the questions presented by such motions and petitions were submitted to the court for hearing and the court found that the facts stated in such verified

answer were true; that the petition of the said Emma Messing *et al.*, naming them, "for an allowance of preferred claims based on certain bonds alleged to be held by them and referred to in said motion were never filed with the receiver herein, or with this court; that the entry of the filing of said petition by the Honorable Carl Yaple, the regular judge of this court on the 14th day of December, 1910, was invalid." It also affirmatively appears from this finding that appellants never at any time filed their claims with the court or receiver, and hence were strangers to the record, and in no position to ask a rescision of such order of distribution. Under such circumstances, any ruling on their petitions or motion could avail them nothing in this court. *Jager* v. *Doherty* (1878), 61 Ind. 528, 534. It might also be remarked in this connection that this finding shows that appellants were in no position to ask or obtain any benefit from either of the errors before discussed. Assuming, however, without so deciding, that the finding of the trial court, improperly found that the appellants had never filed their claim, and that the entry made by Carl Yaple, judge, was invalid, their fourth and fifth assigned errors would still be unavailing. If they had in fact filed their claims and were parties to the record, they should have excepted to and appealed from the order of the court for the payment of the money and not from the order overruling their petitions and motions to set aside such order. *Wabash R. Co.* v. *Dykeman* (1892), 133 Ind. 56, 64, 32 N. E. 823; *Continental Clay, etc., Co.* v. *Bryson* (1907), 168 Ind. 485, 81 N. E. 210. Appellants' sixth assigned error presents no question for the reason that the record does not show that the court refused to hear the intervening petitions of appellants. On the con-

trary the record shows in effect that the court found that no such petitions had ever been filed with the proper court.

This brings us to a consideration of the seventh assigned error which challenges the ruling of the court "that the intervening petitions of these 9. appellants were never filed with the receiver or with the court." It is suggested by appellee that this assignment is not directed against any ruling of the trial court disclosed by the record. The language of the finding of the court is that the "petition for an allowance of claims * * * was never filed", etc. In support of this contention appellee cites *Burck* v. *Davis, supra; Starky* v. *Starky, supra.* See also, *Mesker* v. *Bishop* (1914), 56 Ind. App. 455, 103 N. E. 492, 105 N. E. 644; *Walter A. Wood, etc. Mfg. Co.* v. *Angemeier* (1912), 51 Ind. App. 258, 99 N. E. 500. It is also suggested that an appeal does not lie from a finding of the court that an intervening petition was *never filed*; but that the remedy in such case is to ask leave to file such petition. We do not deem it necessary to decide the questions suggested because it affirmatively appears from the answer of the receiver and from the record in its entirety that appellants are in no position to complain of such ruling. It appears that the Honorable John Morris, by agreement of the parties, was appointed and qualified as special judge in said cause and assumed jurisdiction on June 22, 1910; that in December, 1910, the alleged intervening petitions were left on the table of the clerk of such court with no instructions and by him presented to the regular judge and an entry made by such judge showing such filing; that this was without the knowledge, authority or consent of the special judge. The facts relating to the filing of such petitions were set forth in the receiver's showing and were not dis-

puted by either of appellants. When a special judge is regularly appointed and qualifies and assumes jurisdiction in a cause, he acquires full authority over the case throughout all its stages and the authority of the regular judge is necessarily excluded. The particular case in which such appointment is made, with all of its incidents from the beginning to the end, passes under the exclusive control and jurisdiction of the special judge. *Perkins* v. *Hayward* (1890), 124 Ind. 445, 447, 24 N. E. 1033; *Mayer* v. *Haggerty* (1894), 138 Ind. 628, 635, 38 N. E. 42; *Lerch* v. *Emmett* (1873), 44 Ind. 331, 332; *Staser* v. *Hogan* (1889), 120 Ind. 207, 223, 224, 21 N. E. 911, 22 N. E. 990; *Shugart* v. *Miles* (1890), 125 Ind. 445, 448, 25 N. E. 551; *Courtney* v. *State* (1892), 5 Ind. App. 356, 363, 32 N. E. 335.

It is the contention of appellants that the Honorable Carl Yaple, the regular judge, could have received the petition and that it could have been acted upon later by the special judge who was vested with jurisdiction in the case. In support of this contention, appellants cite the cases of *Hadley* v. *Lake Erie, etc., R. Co.* (1899), 21 Ind. App. 675, 680, 51 N. E. 337; and *Chicago, etc., R. Co.* v *Cunningham* (1904), 33 Ind. App. 145, 146, 147, 69 N. E. 304. In the latter case, Roby, J., speaking for the court, says: "The regular judge of the Washington Circuit Court was unable to preside at the trial of this cause on the day set therefor because of serious illness in his family, and, by agreement of the parties, a special judge was appointed, who thereafter acted therein. The verdict was returned January 3, 1902. January 18 was the last day of the term, and at that time the special judge was ill and unable to attend. In this action the regular judge resumed jurisdiction for the purpose of making the record show the filing of appellant's motion

for a new trial, which was then filed. The practice so followed was proper. He was not disqualified." In support of this proposition of law, two cases are cited, *Hadley* v. *Lake Erie, etc., R. Co., supra*, and *Perkins* v. *Hayward, supra*. The latter case clearly shows the reason for such ruling in the following language: "In our opinion the particular case where there is a special judge called in, with all its incidents from the beginning to the end, passes under the *exclusive control and jurisdiction* of the special judge, subject to revert to the control of the regular judge in the event that the special judge becomes *incapacitated or refuses* to act." (Our italics.) We have indicated enough of the opinion in the case of *Chicago, etc., R. Co.* v. *Cunningham, supra*, to show that the special judge was incapacitated by illness. There is no such showing in the case at bar, or that such special judge refused to act.

Moreover, the right to file a motion for new trial is given by statute and when filed within the proper time, the right is in no sense dependent on the discretion of the court, while the filing of a petition to intervene invokes the discretionary power of the court and thus furnishes another factor distinguishing the instant case from those relied on by appellant. Creditors desiring to intervene in receivership proceedings do so under §273 Burns 1914, §272 R. S. 1881, which applies "to any controversy in the nature of a civil action," and such creditors must first secure leave of court. *Cambria Iron Co.* v. *Union Trust Co.* (1900), 154 Ind. 291, 296, 55 N. E. 745, 56 N. E. 665, 48 L. R. A. 41; *Voorhees* v. *Indianapolis, etc., Mfg. Co.* (1895), 140 Ind. 220, 39 N. E. 738; *Thayer* v. *Kinder* (1910), 45 Ind. App. 111, 89 N. E. 408, 91 N. E. 323; *State* v. *Union Nat. Bank* (1896), 145

Ind. 537, 44 N. E. 585, 57 Am. St. 209; *Gale* v. *Shillock* (1886), 4 Dak. 182, 30 N. W. 138; *Zumbro* v. *Parnin* (1895), 141 Ind. 430, 40 N. E. 1085; 1 Hogate, Pl. and Pr. §118. The application or motion for such leave of court calls for the exercise of judicial discretion and must be presented to the judge lawfully presiding in the receivership proceeding. When so presented such judge must determine "First, whether, conceding it to be a proper case for intervention, her complaint is sufficient in law for such purpose? Second, was her application made in time? Third, had (the intervener) * * * such an interest in the matter in litigation, * * * as would entitle her to become a party by intervention?" *Gale* v. *Frazier* (1886), 4 Dak. 196. A creditor of an insolvent corporation in order to entitle himself to a dividend must do more than put the receiver upon inquiry as to his claim. He must file proof in itself satisfactory. *Meding* v. *Todd* (1898), 56 N. J. Eq. 820, 41 Atl. 222; 34 Cyc 343. One having a claim upon the property desiring to participate in the distribution of the funds under the control of the court through its receiver must intervene in the court of the receivership in the case in which the receiver has been appointed and establish his rights in that tribunal or obtain its leave to bring an independent action. 34 Cyc 217; High, Receivers (4th ed.) §254. Under the conditions as shown by the record, exclusive jurisdiction in said cause rested with the special judge, and such court properly held that appellants' petition "for allowance of preferred claims * * * was never filed with the receiver herein or with this court." In this connection, it may be suggested "that the administration of an estate by a receiver is not purely a pro-

ceeding *in rem*, and that the acts of such receiver, and the orders of the court in which the estate is administered, do not bind persons who are not parties to the proceeding, and who had no opportunity of being heard. * * * The appointment of a receiver will not, as a general rule, affect or divest an existing lien." *J. W. Dann Mfg. Co.* v. *Parkhurst* (1890), 125 Ind. 317, 320, 321, 25 N. E. 347, and cases cited.

The eighth assigned error seeks to present the action of the court in disallowing the petition of Emma Messing to intervene and have her claim allowed. As heretofore indicated on January 18, 1910, the court ordered notice given to creditors to file their claims with the receiver by March 1, 1910. On January 11, 1911, another order was made that the receiver give notice to creditors to file verified claims with the receiver or the court by January 30, 1911. The record shows that both notices were given. On February 16, 1911, the claims then filed with the receiver were allowed by the court and a distribution ordered. Said petition to intervene was not filed until February 5, 1912, or more than two years after the receiver was appointed and more than one year after the expiration of the time fixed by the second order for filing claims, and more than a year after the distribution was made. Said petitioner's attorney had knowledge of the various steps taken in said proceeding and according to the receiver's undisputed verified answer,- had told the receiver that appellant's claim would not be filed. The petitioner made no attempt to make any showing why she had not complied with the orders of the court for filing her claim, or to explain her conduct, or that of her attorney in reference thereto. An intervener must be diligent, and any unreasonable delay after knowl-

edge of the suit will justify the court in disallowing such intervention, where no satisfactory excuse is shown for the delay. *Halsted* v. *Forest Hill Co., supra; Smith* v. *Gale* (1892), 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521; *Gale* v. *Shillock, supra.* Appellant, Emma Messing, here in this court seeks to meet this apparently unwarranted delay by the claim that she ought not to be defeated by laches for the reason that the record shows that she has been before the court claiming recognition all this time. She does not, however, deny that she was notified of the time when her claim should have been filed, nor claim she was refused permission to file her claim prior to the time fixed by the court's orders. Under the facts disclosed, the disallowance of such petition for intervention filed February 5, 1912, was not an abuse of the discretion vested in the lower court in such matters.

It is finally suggested by appellees that the "joint assignment and each of the separate assignments of error of appellants numbered from one to seven, inclusive, are each based upon an interlocutory order made in the progress of the cause; "that the case has not been finally disposed of below; that there has been no attempt on this appeal to comply with the statute governing appeals from interlocutory orders, and that such "assignments therefore, present no question for this court's determination." The suggestion is one that would require consideration, if our disposition of the errors assigned necessitated a reversal of the judgment below, but, 14. in view of the fact that our disposition of such assigned errors must result in an affirmance of the judgment, we deem it unnecessary to discuss or decide the question suggested. It should be said, however, in this connection, that jurisdiction of an appeal from an interlocutory order is in the Supreme

Court and not in this court. In this case, however, there has been no attempt to perfect an appeal from an interlocutory order as provided by statute (§§658, 688, 1391 Burns 1914, §§627, 647 R. S. 1881, Acts 1901 p. 565), and if appellees' suggestion were correct a dismissal of the appeal, at least as to appellants other than Emma Messing, would follow rather than an affirmance of the judgment. There are other irregularities in the appeal but in view of our conclusion as to the merits of the appeal we deem it unnecessary to discuss them. Finding no reversible error, the judgment below is affirmed.

NOTE.—Reported in 108 N. E. 36. As to what judgments and orders may be appealed from, see 20 Am. St. 173. See, also, under (1) 23 Cyc 604, 608; (2) 23 Cyc 616; (3) 3 C. J. 1410; 2 Cyc 1014; 3 Cyc 160; (4) 34 Cyc 374; (5) 34 Cyc 371; (6) 3 Cyc 366; (7) 3 Cyc 239; (8) 3 C. J. 1364; 2 Cyc 1001; (9) 23 Cyc 613; (10) 34 Cyc 217; (11) 34 Cyc 343; (12) 34 Cyc 180; (13) 34 Cyc 342; (14) 3 C. J. 438; 2 Cyc 591.